Gordon Andrew Petersen, II (SBN: 279587)
LAW OFFICE OF DREW PETERSEN, P.C.
17581 Irvine Boulevard, Suite 108
Tustin, California 92780
Telephone: (714) 569-0043
Facsimile: (714) 569-0289
Email: drew@dpetersenlegal.com

Brian P. Kinder (SBN: 212332)
THE KINDER LAW GROUP, APC
19200 Von Karman Avenue, Fourth Floor
Irvine, California 92612
Telephone: (949) 216-3070
Facsimile: (949) 216-3074
Email: bkinder@tklglaw.com

Attorney for Plaintiffs,
MIGUEL SOLORIO and THESHOWLORIOS INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MIGUEL SOLORIO, and THESHOWLORIOS INC.,**<br><br>                              Plaintiffs,<br><br>v.<br><br>**CARECO, LLC, JEFF MARTIN, TERRY ROBERTS, PAUL STROMBERG and DOES 1 to 20**, inclusive,<br><br>                              Defendants. | Case No.: 8:24-cv-663<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff MIGUEL SOLORIO ("**Solorio**") and Plaintiff THE SHOWLORIOS INC. ("**Showlorios**") (collectively, "**Plaintiffs**"), by and through their undersigned counsel, alleges against Defendant CARECO LLC, Defendant JEFF MARTIN, Defendant TERRY ROBERTS, and Defendant PAUL STROMBERG (collectively, "**Defendants**"), as follows:

## NATURE OF THE ACTION

1.     Solorio began rehabilitating shoes because his son, who has autism, tip-toes when he walks and causes the toe box of his shoes to bend and become disfigured. When Solorio started making and publishing videos showcasing his repair skills, the videos went viral on TikTok®.  Today, having published hundreds, if not thousands, of videos across numerous platforms and being featured on nationally broadcast television shows such as Access Hollywood® (pictured below) and the like, Solorio is a beloved personality who is known to his millions of followers by (i) his name, image and likeness, (ii) his social media handle @TheShowlorios, (iii) the distinctive trademark SHOE DOC™, (iv) the tagline "When You See the Foam, You're In the Zone", and (v) the catch-phrase "I Just Saved Myself 150 Bucks!" which Solorio uses to conclude many of his videos along with side-by-side images showing the before-and-after of the rehabilitated sneakers (collectively, "**The SHOE DOC IP**").



2.     Long before meeting Defendants, Solorio decided to capitalize on his newly discovered fame by marketing and selling shoe care products and accessories. After overwhelmingly successful test-marketing results, Solorio determined that he would need a service provider to handle significant product manufacturing, sales and distribution while Solorio handled promotions through the continued creation and publishing of his broadly followed online videos.  Within a month, Solorio entered into an agreement with Careco.



3.     By the time Solorio met Careco, Solorio had already conceived of a name for the yet-to-be-released product (Foam Zone 150) and had also developed a stylized logo (FZ150).  Solorio and Careco entered into a partnership agreement

wherein Solorio agreed to split net proceeds equally with Careco as well as grant the company a fifty percent (50%) ownership interest in and to the trademark for the underlying product name FOAM ZONE 150 and the domain name www.foamzone150.com.

4.     Many months after the successful launch, Solorio discovered that Defendants were underreporting sales, inflating expenses, and had defrauded Solorio of untold hundreds of thousands of dollars.  Despite Solorio terminating the partnership, Defendants now refuse to wind down and dissolve the partnership. Further, despite no longer having an implied license to use The SHOE DOC IP, Defendants are engaging in acts of willful infringement by continuing to use Solorio's name, image and likeness, the @TheShowlorios social media handle, the SHOE DOC™ trademark, the taglines "When You See the Foam, You're In the Zone" and "I Just Saved Myself 150 Bucks!", and the www.theshoedoc.com domain name and website.  Moreover, Defendants refuse to account to Solorio for the sale of the products that Careco was actually authorized to sell – Foam Zone 150.

5.     Through this action, Solorio seeks to recover the substantial compensatory, statutory and punitive damages to which Plaintiffs are entitled as a result of Defendants' misconduct, as well as to permanently enjoin any further misconduct and infringement by Defendants.

## JURISDICTION AND VENUE

6.     This action arises under the Lanham Act, 15 U.S.C. §§ 1051, et seq. This Court has exclusive federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338.

7.     This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of California pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiffs' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b)(2)-(c) because Defendants, and each of them, are subject to personal jurisdiction in this District and a substantial part of the events, acts and/or omissions giving rise to the claims herein occurred in this District.

## **PARTIES**

9.    Solorio is an individual, residing in the County of Riverside, State of California. Before dissociating in January 2024, Solorio was a fifty percent partner of a general partnership with Defendant Careco, LLC, entered in June 2022, for the sale and distribution of shoe care products under the product name Foam Zone 150.

10.    Showlorios is a corporation formed under the laws of, doing business in and located in the State of California.

11.    At all times mentioned herein, Defendant Careco, LLC, and DOES 1 to 5 ("**Careco**") are business entities of form and domicile unknown, doing business in and located in the State of California. In or around June 2022, Defendant Careco entered into a written partnership agreement with Solorio for the sale and distribution of shoe care products and accessories under the name FoamZone 150 and FZ150.

12.    At all times mentioned herein, Defendant Jeff Martin and DOES 6 to 10 ("**Martin**") are individuals, residing in the County of Orange, State of California. Plaintiffs are informed, believe, and allege thereon Defendant Martin is a fifty percent owner of Defendant Careco. Furthermore, Defendant Martin is an owner and officer of Careco, responsible for the actions and inactions of Careco since May 2022.

13.    At all times mentioned herein, Defendant Terry Roberts and DOES 11 to 15 ("**Roberts**") are individuals, residing in the, State of Florida. Plaintiffs are informed, believe, and allege thereon Defendant Roberts is a fifty percent owner of Defendant Careco. Furthermore, Defendant Roberts is an owner and officer of Careco, responsible for the actions and inactions of Careco since May 2022.

14.     At all times mentioned herein, Defendant Paul Stromberg and DOES 16 to 20 ("**Stromberg**") are individuals, residing in the County of Orange, State of California. Plaintiffs are informed, believe, and allege thereon Defendant Stromberg is an employee of Defendant Careco. Furthermore, Defendant Stromberg is the named applicant in an application pending before the U.S. Patent and Trademark Office ("USPTO") for the trademark SHOE DOC™ for use in connection with "Cleaner for use on shoes, purses, upholstery, fabrics" and identified under Serial No. 97440597 (the "**'597 Application**").

15.     The true names, identities, or capacities, whether individual, associate, corporate, or otherwise of Defendants, DOES 1 to 20, inclusive, are unknown to Plaintiff, who therefore sue said Defendants by such fictitious names. When the true names, identities, or capacities of such fictitiously designated Defendants are ascertained, Plaintiff will ask leave of Court to amend this Complaint to assert their true names, identities, and capacities, together with the proper charging allegations.

16.     Plaintiff is informed, believes, and alleges thereon, that each of the Defendants designated herein as a DOE is responsible in some manner for the events and happenings herein referenced to.

17.     Plaintiff is informed, believes, and alleges thereon, that at all times mentioned in this Complaint, Defendants, and each of them, inclusive of DOES 1 through 20, were authorized and empowered by each other to act, and did so act, as agents of each other and all of the things herein alleged to have been done by them were done in the capacity of such agency. Upon information and belief, all Defendants are responsible in some manner for the events described herein.

18.     Plaintiff is informed, believes, and alleges thereon, that at all times mentioned in this Complaint, Defendants, and each of them, inclusive of DOES 1 through 20, were the partners, joint venturers, agents, or employees of their co-

defendants, and in doing the things alleged in this Complaint were acting within the course and scope of that partnership, joint venture, agency, or employment.

## FACTUAL ALLEGATIONS

19.    In or around December 2021, Solorio developed a brand of shoe care products and accessories utilizing the trademark SHOE DOC™ and the product names FZ150™ and FoamZone 150™.  Defendants learned of Solorio's branding and business plan, and offered to partner with Solorio for the production, sale, and distribution of the products and accessories.

20.    In or around June 2022, Solorio entered into a written partnership agreement with Careco, outlining the terms, conditions, and obligations of the parties (the "**June 2022 Agreement**"). As part of the June 2022 Agreement, Solorio agreed to create online content and videos to market the FZ150 product line and Careco agreed to be responsible for manufacturing the products and fulfilling all orders received.  In consideration of the June 2022 Agreement, the parties agreed to jointly own the trademark for the product FZ150 and the domain name www.foamzone150.com as well as split equally all net proceeds – with net sales defined as the remaining funds after deducting: i) cost of goods, ii) shipping costs, iii) merchant fees, iv) sales tax, and v) website fees. A true and correct copy of the June 2022 Agreement is attached hereto as **Exhibit 1**.

21.    On or about the third of every month from July 2022 to January 2024, Defendant Careco, by and through Defendant Martin, provided Solorio with a monthly sales report representing the prior month's total sales, realized gross profit, shipping costs, and other costs incurred, with a calculation of the net profit to be distributed to Careco and Solorio. A true and correct copy of a representative sample of the monthly sales report for the month of September 2023 is attached hereto as **Exhibit 2**.

22.     In or around December 2023, Solorio discovered Defendant Careco had been and was overcharging for the cost of goods. Instead of providing Solorio with Careco's actual cost to obtain the goods, Careco charged the partnership the wholesale price, at least at a 30% profit markup of the actual cost, which solely benefited Careco.

23.     Furthermore, in or around December 2023, Solorio discovered Defendant Careco had been and was misrepresenting the purchase price of the cost of goods. Careco maintained it continued to incur higher cost of goods prices to Solorio and the partnership despite the fact it obtained new suppliers and ordered products in bulk, receiving significant pricing discounts. Accordingly, Careco misrepresented the costs of goods to Solorio, and took reimbursements they were not entitled to since at least January 2023.

24.     Solorio also discovered that Defendant Careco had submitted applications to the U.S. Patent and Trademark Office ("**USPTO**") solely in the name of Careco which sought registration of the trademark FZ150 in standard characters (Serial No. 98033769) and in a stylized format (Serial No. 98056947).

25.     Further, Solorio discovered that Defendant Stromberg, an employee of Careco, had submitted an application to the USPTO in his name which sought registration of the SHOE DOC™ trademark – i.e., the '597 Application.

26.     Further, Solorio discovered that Careco had registered the domain name www.theshoedoc.com in Careco's name.

27.     Solorio demanded that Defendants relinquish ownership of the SHOE DOC™ trademark application and the www.theshoedoc.com domain name to Solorio, but Defendants refused.

28.     On or about January 9, 2024, Solorio withdrew from his partnership with Careco and elected to wind up and dissolve the business. A true and correct copy of the withdrawal letter is attached hereto as **Exhibit 3**.

29.     On January 26, 2024, Solorio, through his counsel, demanded Careco make available all books and records of the partnership for inspection and copying between June 3, 2022, and January 9, 2024. However, Careco failed or refused to allow an inspection and only provided Solorio with partial financial records from June 2023, which documented approximately $294,500 in total expenses, despite the fact Careco's monthly sales reports claimed to have incurred over $200,000 per month in expenses.

30.     Plaintiffs are informed, believe, and allege thereon that since January 2024, Careco has not taken any action to wind up and dissolve the partnership, and continues to operate the company website, and process orders for the FZ150 shoe care products and accessories. Accordingly, Solorio seeks judicial supervision and intervention to dissolve and liquidate the partnership.

31.     Plaintiffs are further informed, believe, and allege thereon that since June 2022 Careco has taken no action to segregate the assets, income, expenses, and liabilities of the partnership with Solorio, failed or refused to account to Solorio despite his requests, failed or refused to communicate with Solorio regarding important developments to the partnership, and has failed or refused to distribute the assets and income owed to Solorio.

32.     Plaintiffs are informed, believe, and allege thereon during the term of the partnership, Careco was a part owner and supplier of other companies which offered rival and competing products to the FZ150 line of products and partnership with Solorio. Accordingly, Careco had a conflict of interest which it never informed Solorio about and did not obtain his informed consent. Plaintiffs are further informed, believe, and allege thereon that Careco diverted potential sales from FZ150 to its competing companies because the competing products were less expensive and allowed Careco to realize higher profits than in the partnership with Solorio.

**FIRST CLAIM FOR RELIEF**

**(Federal Trademark Infringement - 15 U.S.C. § 1125(a))**

**(Against All Defendants)**

33.   Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

34.   The trademarks within Plaintiffs' SHOE DOC IP ("**Plaintiffs' Trademarks**") have tremendous goodwill, are distinctive, have been used throughout the United States, and are well known to the trade and members of the purchasing public.

35.   The public associates and identifies Plaintiffs' Trademarks with Plaintiffs.

36.   Upon entering into the June 2022 Agreement with Careco, Solorio impliedly granted a royalty free license to Careco to use Plaintiffs' Trademarks. Despite Solorio dissociating from Careco and demanding wind-down, Defendants are using Plaintiffs' Trademarks to advertise and sell, without limitation, shoe care products and accessories (the "**Infringing Products**").

37.   Defendants' distribution, advertisement, sale, offer for sale, and/or other sale of the Infringing Products in connection with Plaintiffs' Trademarks constitutes false designation of origin or sponsorship and tends falsely to represent that the Infringing Products originate from Plaintiff or have been sponsored, approved, or licensed by Plaintiff or is in some way affiliated or connected with Plaintiff.

38.   Such conduct of Defendants is likely to confuse, mislead, and deceive Defendants' customers, purchasers, and members of the public as to the origin of the Infringing Products or cause said persons to believe that the Infringing Products and/or Defendants' infringing conduct have been sponsored, approved, authorized,

or licensed by Plaintiffs or are in some way affiliated or connected with Plaintiffs, all in violation of 15 U.S.C. § 1125(a).

39.   Defendants' actions were done willfully with full knowledge of the falsity of such designations of origin and false descriptions or representations, and with the express intent to cause confusion, and to mislead and deceive the purchasing public.

40.   This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendants' actions have been malicious, fraudulent, deliberate, willful, and taken in bad faith with full knowledge and in conscious disregard of Plaintiff's rights. As such, Plaintiffs are entitled to recover their attorneys' fees pursuant to 15 U.S.C. § 1117(a).

41.   Plaintiffs are also entitled to the disgorgement of Defendants' profits pursuant to 15 U.S.C. § 1117(a).

42.   Plaintiffs are further entitled to recover treble damages pursuant to 15 U.S.C. § 1117(a).

43.   Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to injunctive relief because the conduct of Defendants described above, has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiffs in and to Plaintiffs' Trademarks, and to the business, reputation, and goodwill of Plaintiffs.

44.   Plaintiffs have been damaged by, and Defendants have profited from, Defendants' wrongful conduct in an amount to be proven at trial.

/ / /
/ / /
/ / /
/ / /
/ / /

1

2

3

## SECOND CLAIM FOR RELIEF

### (California Common Law Trademark Infringement)

### (Against All Defendants)

4       45.    Plaintiffs incorporate all of the preceding paragraphs by reference, as

5   through fully set forth herein.

6       46.    Plaintiffs have continuously used Plaintiffs' Trademarks in connection

7   with entertainment services and shoe care products.

8       47.    Defendants have used one or more marks on or in connection with the

9   sale, offering for sale, distribution or advertising of shoe care products, and related

10  products and accessories provided by Defendants, in such a manner as is likely to

11  cause confusion, mistake, or to deceive.

12      48.    Defendants' infringing activities have caused and are continuing to

13  cause damage to Plaintiffs.

14      49.    Defendants' activities have caused, and continue to cause, irreparable

15  harm to Plaintiffs' goodwill and reputation.

16      50.    Defendants' infringing activities constitute common law infringement

17  of Plaintiffs' Trademarks.

18      51.    Defendants have been infringing and continue to infringe Plaintiffs'

19  Trademarks with full knowledge of Plaintiffs' common law rights and knowing that

20  Plaintiffs' Trademarks are associated exclusively with Plaintiffs.

21      52.    Defendants' conduct is intentional, willful, wanton, and malicious, and

22  is undertaken with intent to reap the benefit of Plaintiffs' goodwill in and to

23  Plaintiff's Trademarks.

24      53.    If the acts of Defendants are allowed to continue, Plaintiffs will

25  continue to suffer irreparable injury for which they has no adequate remedy at law.

26  Plaintiffs are entitled to permanent injunctive relief to prevent such irreparable

27  injury.

54.     Plaintiffs are entitled to the recovery of damages from Defendants in an amount to be determined at trial.

## THIRD CLAIM FOR RELIEF

### (Federal Unfair Competition - 15 U.S.C. § 1125(a))

### (Against All Defendants)

55.     Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

56.     Defendants' use of one or more properties comprising the SHOE DOC IP in connection with shoe care products is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association with Plaintiffs, or as to the origin, sponsorship, or approval of the services, or commercial activities by Defendants.

57.     Defendants' actions constitute a willful false designation of origin and misrepresentation in violation of 15 U.S.C. § 1125(a) with the intent to capitalize on Plaintiffs' goodwill.

58.     If the acts of Defendants are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law. Plaintiffs are entitled to permanent injunctive relief to prevent such irreparable injury.

59.     Plaintiffs are entitled to the recovery of damages from each Defendant in an amount to be proven at trial, but which amount exceeds the jurisdictional minimum of this Court. Damages include the actual damages sustained by Plaintiffs, Defendants' profits, and the cost of the action together with Plaintiffs' reasonable attorney's fees.

/ / /

/ / /

/ / /

## FOURTH CLAIM FOR RELIEF

### (California Common Law Unfair Competition)

### (Against All Defendants)

60.    Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

61.    Through the acts and practices alleged above, Defendants have violated the common law of unfair competition, which has caused harm and damage to Plaintiffs.

62.    If the acts of Defendants are allowed to continue, Plaintiffs will continue to suffer irreparable injury for which they have no adequate remedy at law. Plaintiff is entitled to permanent injunctive relief to prevent such irreparable injury.

63.    Plaintiffs are entitled to the recovery of damages from each Defendant in an amount to be proven at trial, but which amount exceeds the jurisdictional minimum of this Court. Damages include the actual damages sustained by Plaintiff, Defendants' profits, and the cost of the action together with Plaintiff's reasonable attorney's fees.

## FIFTH CLAIM FOR RELIEF

### (Cybersquatting, 15 U.S.C. § 1125(d))

### (Against All Defendants)

64.    Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

65.    As owners, registrants, and/or operators of the website (the "**Website**") appearing at the domain name www.theshoedoc.com (the "**Domain Name**"), Defendants have engaged in a false designation of origin and/or have a bad-faith intent to profit and obtain other benefits from the registration, trafficking and/or use of the Domain Name, pursuant to the Anti-Cybersquatting Consumer Protection Act of 1999, 15 U.S.C. § 1125(d) (hereinafter the "Anti-Cybersquatting Act").

66.     Plaintiffs have continuously used the SHOE DOC™ trademark in commerce to identify Plaintiffs' unique brand, business and products associated with the mark.

67.     The SHOE DOC™ trademark, as used and incorporated by Defendants in the Domain Name, was distinctive and famous, and was used by Plaintiffs in commerce prior to and at the time the Domain Name was registered and/or otherwise obtained by Defendants, and at all other times relevant hereto.

68.     The Defendants' bad-faith intent to use the Domain Name to direct and divert consumers to the Website, thus confusing consumers into believing that Plaintiffs authorize, sponsor or somehow are affiliated with Defendants' unauthorized use of the SHOE DOC™ trademark, which is not the case.

69.     Plaintiffs are informed and believe and based thereon allege that Defendants, and each of them, are trading on Plaintiffs' good reputation and recognizable trademarks for a commercial purpose via the Website and Domain Name, thus converting the potential economic value in the SHOE DOC™ trademark to their own commercial advantage or in an effort to harm Plaintiffs.

70.     Plaintiffs are informed and believe and based thereon allege Defendants, and each of them, have had, and continue to have, a bad faith intent to profit from the Domain Name. Specifically, Defendants continue to use the Domain Name without the permission or consent of Plaintiffs for the purposes of obtaining a profit and other benefits from exploitation and use of the Domain Name and Website, even after Plaintiffs demanded that Defendants discontinue the use of the Domain Name incorporating Plaintiff's SHOE DOC™ trademark. Such actions constitute a violation of the Anti-Cybersquatting Act.

71.     Plaintiffs are therefore entitled to a judgment from this Court compelling Defendants, and each of them, to transfer all ownership in the Domain Name to Plaintiff pursuant to 15 U.S.C. § 1125(d)(1)(c).

72.    Plaintiffs are further entitled to a Preliminary and Permanent Injunction enjoining Defendants, and each of them, and their agents and employees and representative, from any use of the Domain Name, or any other variations thereof, pursuant to 15 U.S.C. § 1116(a).

73.    Plaintiffs are further entitled to a judgment from this Court awarding Plaintiffs all actual damages proximately caused by Defendants, and each of them, or, in the alternative, statutory damages.

74.    Plaintiffs are further entitled to a judgment from this Court awarding them recovery of all costs of the action, including an award of reimbursement of reasonable attorneys' fees, pursuant to 15 U.S.C. § 1117 (a)(3).

## SIXTH CLAIM FOR RELIEF

### (Use of Name or Likeness – Cal. Civ. Code § 3344)

### (Against All Defendants)

75.    Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

76.    Defendants, knowingly used Plaintiffs' name, image, and likeness, to sell FZ150 shoe care products and accessories after Solorio's dissociation from the partnership with Careco.

77.    Defendants' use of Solorio's likeness was directly connected to Defendants' commercial purpose in that Defendants , reproduced, published and/or distributed images and videos depicting Solorio in association with the promotion and advertisement of products intended for sale and profit for Defendants.

78.    The use did not occur in connection with a news, public affairs, or sports broadcast or account, or with a political campaign.

79.    Defendants' conduct involved the appropriation and/or use of the name, image, likeness and personality of Solorio because the use falsely implies Plaintiff's

assistance with, association with, and/or endorsement of Defendant's products and/or services.

80. Defendants' actions are not authorized and are without Plaintiff's consent.

81. Defendants' gained a commercial benefit by using Plaintiffs' name, likeness, or identity.

82. Plaintiffs were harmed.

83. As a further proximate result of Defendants' actions, Plaintiffs are entitled to damages, including but not limited to statutory damages, actual damages suffered by Plaintiffs, any profit gained by Defendants, and/or attorney's fees and costs.

84. Because Defendants' actions were undertaken willfully, oppressively, fraudulently, maliciously, and in conscious disregard of Plaintiff's rights of privacy and publicity, Plaintiffs seek an award of punitive damages against each Defendant.

## SEVENTH CLAIM FOR RELIEF
### (California Common Law Right of Publicity)
### (Against All Defendants)

85. Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

86. Defendants used the name, likeness, or identity of Solorio without consent.

87. Defendants gained a commercial benefit by using the name, likeness, or identity of Solorio.

88. Plaintiffs were harmed, and continue to be harmed, as a result of Defendants' actions and ongoing actions.

89. Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

90.     As a proximate result of Defendants' actions, Solorio is exposed to contempt, ridicule, embarrassment, humiliation, hurt feelings, mental anguish and suffering in an amount in excess of the minimum jurisdictional limits of this Court.

91.     As a further proximate result of Defendants' actions, Plaintiffs are entitled to the actual damages suffered by Plaintiffs, any profit gained by Defendants, and attorney's fees and costs.

92.     Because Defendants' actions were undertaken willfully, oppressively, fraudulently, maliciously, and in conscious disregard of Plaintiffs' rights of privacy and publicity, Plaintiffs seek an award of punitive damages against each Defendant.

## **EIGHTH CLAIM FOR RELIEF**

### **(Federal False Advertising – 15 U.S.C. § 1125(a)(1)(B))**

### **(Against All Defendants)**

93.     Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

94.     Defendants are falsely and misleadingly advertising the Infringing Products by either explicitly or implicitly creating the false impression that Solorio is still associated with Defendants and the Infringing Products.

95.     Such false or misleading statements will actually deceive or have the tendency to deceive a substantial segment of the consumers and prospective consumers of the Infringing Products.

96.     Such false or misleading statements are material and likely to influence the purchasing decisions of consumers.

97.     Such false or misleading representations are made in interstate commerce and for commercial purposes.

98.     As a direct and proximate result of Defendants' conduct, and but for the false or misleading representations by Defendants, Plaintiffs will suffer damages, including a loss of reputation, sales, profits and customers.

99.    Defendants' actions as alleged herein will continue to cause irreparable and inherently unquantifiable injury and harm to the public and Plaintiffs business, reputation, and goodwill, unless Defendants' unlawful conduct is enjoined by this Court.

100.    Pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to preliminary and permanent injunctive relief to enjoin Defendants' continuing acts.

101.    Pursuant to 15 U.S.C. § 1117, Plaintiffs are entitled to recover all damages sustained on account of Defendants' actions, an accounting for profits realized by Defendants, and the costs of this action.

102.    Defendants' actions have been willful and deliberate, entitling Plaintiffs to recover treble damages and/or profits. In addition, as this is an exceptional case pursuant to 15 U.S.C. § 1117(a), Plaintiffs are entitled to an award of reasonable attorneys' fees.

## NINTH CLAIM FOR RELIEF

**(California False Advertising - Cal. Bus. & Prof. Code § 17500)**

**(Against All Defendants)**

103.    Plaintiffs incorporate by reference the preceding paragraphs as incorporated fully set forth herein.

104.    Defendants continue to operate using the SHOE DOC IP when Defendants are not authorized to do so and for the purposes of capitalizing on the reputation, clout, goodwill and prestige of Plaintiffs' rights in and to the SHOE DOC IP.

105.    Through the business acts and practices alleged above, Plaintiff is informed and believes and therefore alleges that Defendants have engaged in acts and practices of false advertising by making misleading statements in connection with the sale of goods or services to the public within the State of California, in

violation of California Business and Professions Code § 17500, which has caused irreparable injury to Plaintiff as alleged herein above.

## **TENTH CLAIM FOR RELIEF**

**(California Unfair Competition – Cal. Bus. & Prof. Code § 17200)**

**(Against All Defendants)**

106.   Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

107.   Plaintiff brings this cause of action pursuant to Business and Professions Code 17200, acting individually and for the interests of the general public.

108.   California Business and Professions Code 17200 provides that unfair competition shall mean and include, "all unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

109.   These practices constitute unlawful, unfair and fraudulent business acts or practices, within the meaning of California Business and Professions and Code 17200.

110.   The acts and practices described were and are unlawful and therefore constitute unfair business practices within the meaning of Business and Professions Code Section 17200.

111.   As a result of their conduct described above, Defendants have been and will be unjustly enriched.

112.   Defendants' conduct constitutes unfair and/or fraudulent business practices.

113.   Plaintiffs, pursuant to California Business and Professions Code 17200, seeks an order of this court, compelling Defendants to provide restitution, and to disgorge the monies collected and profits realized by Defendants, as a result of their

unfair business practices, and injunctive relief calling for defendants to cease such unfair business practices in the future.

## ELEVENTH CLAIM FOR RELIEF

### Breach of Contract

### (Against Defendant Careco)

114.   Plaintiffs incorporate all of the preceding paragraphs by reference, as through fully set forth herein.

115.   Solorio entered into a written partnership agreement on or about June 3, 2022, with Careco, LLC whereby Careco agreed to purchase and warehouse all FZ150 product components at its own cost and expense, manufacture and assemble products, and fulfill orders of FZ150 products placed online. Solorio agreed to create marketing content to grow brand awareness and sales. Furthermore, the trademark and domain of FZ150 were to be jointly owned 50/50, and the net proceeds from the sale of products (only permitted deductions were cost of goods, shipping, merchant fees, sales tax, and website fees) were to be split equally.

116.   Solorio did everything required of him under the agreement.

117.   Careco breached the agreement with Solorio by not supplying components at its sole cost and expense, and by demanding and reimbursing itself money which was not due under the Agreement, claiming expenses to the partnership which were not actually incurred, and obtaining full and complete ownership of the FZ150 trademark and domain despite the agreement's terms.

118.   Solorio has been harmed.

119.   Defendant's actions were a substantial factor in causing Solorio's harm.

/ / /

/ / /

/ / /

/ / /

**TWELFTH CLAIM FOR RELIEF**

**Implied Covenant of Good Faith and Fair Dealing**

**(Against Defendant Careco)**

120.   Plaintiffs incorporate by reference, as though fully set forth herein, all of the proceeding paragraphs.

121.   Solorio and Defendant Careco entered into a contract.

122.   Solorio did all, or substantially all of the significant things the contract required him to do.

123.   All conditions required for Defendant Careco's performance occurred.

124.   Defendant obtained an implied license to use the name, image, and likeness of Solorio and his brand, Shoe Doc, to promote FZ150 sales, but continued to use them after Solorio's withdrawal from the partnership and demand to cease all production. Further, Defendant Careco promised Solorio it would develop and use unique proprietary products to be sold by the partnership but did not do so, and Careco continues to sell FZ150 products despite Solorio's prior demand the partnership be wound up and dissolved.

125.   By doing so, Careco did not act fairly and in good faith.

126.   Solorio has been harmed by Defendant Careco's conduct.

**THIRTEENTH CLAIM FOR RELIEF**

**Cause of Action**

**Intentional Misrepresentation**

**(Against Defendants Careco, Martin, and Roberts)**

127.   Plaintiffs incorporate by reference, as though fully set forth herein, all of the proceeding paragraphs.

128.   Defendant Careco and Martin represented to Solorio that facts were true. Specifically, on each and every month's sales report from June 2022 to January 2024, Martin and Careco, represented the partnership received a specific amount of

revenue, and a corresponding gross product after deducting the cost of goods due to Careco. Furthermore, Martin and Careco represented the merchant processing fee every month was a consistent 4% in each month's sales report.

129. In or around May 2022, over the phone before the partnership agreement was signed, Defendant Roberts and Martin represented to Solorio Defendant Roberts already created a proprietary formula for a new shoe cleaner, which would be used solely for the FZ150 product line. Defendant Roberts also represented he was in the process of developing another product formulation which could be incorporated into new FZ150 products in the future.

130. Defendants' representations were false. Defendants did not use a proprietary shoe cleaning formula or product for FZ150 and overstated the cost of goods Defendant Careco actually incurred and paid between December 2022 and January 2024. Furthermore, the merchant processing fee was less than 4%.

131. Defendants knew the representations were false when they made it.

132. Defendants intended Plaintiff to rely on their misrepresentations.

133. Solorio reasonably relied on Defendants' misrepresentations.

134. Solorio reliance on Defendants' misrepresentations was a substantial factor in causing Solorio's harm.

**FOURTEENTH CLAIM FOR RELIEF**

**Negligent Misrepresentation**

**(Against Defendants Careco, Martin, and Roberts)**

135. Plaintiffs incorporate by reference, as though fully set forth herein, all of the proceeding paragraphs.

136. Although Defendants may have honestly believed the representations to be true, they had no reasonable grounds for believing it to be true when made.

/ / /

/ / /

**FIFTEENTH CLAIM FOR RELIEF**

**Concealment**

**(Against Defendants Careco, Martin, and Roberts)**

137.   Plaintiffs incorporate by reference, as though fully set forth herein, all of the proceeding paragraphs.

138.   Plaintiff was a business partner of Defendant Careco, the company Defendants Martin and Roberts owned and managed.

139.   Defendants intentionally failed to disclose some facts to Solorio, which were only known to them, which Solorio could not discover, and then actively prevented Solorio from discovering the facts. These included the expenses paid to suppliers for goods and raw materials, the monthly merchant processing fees, and the use of non-proprietary formulas for FZ150 products.

140.   Solorio did not know the concealed facts.

141.   Defendants intended to deceive Solorio by concealing the facts.

142.   Had the omitted information been disclosed to Solorio, he would have reasonably behaved differently.

**SIXTEENTH CLAIM FOR RELIEF**

**Breach of Fiduciary Duty**

**(Against Defendants Careco, Martin, and Roberts)**

143.   Plaintiffs incorporate by reference, as though fully set forth herein, all of the proceeding paragraphs.

144.   Defendant Careco was Solorio's business partner. Defendants Martin and Roberts were the owners and managers of Careco, responsible for the activities of Careco regarding Plaintiff.

145.   Defendants acted on Solorio's behalf for purposes of manufacturing, distributing, and shipping shoe care products and accessories for the FZ150 product line.

146.   Defendants failed to act as a reasonably careful business partner would have acted under the same or similar circumstances.

147.   Defendants acted on behalf of a party whose interests were adverse to Solorio in connection with the sale of shoe care products and accessories.

148.   Solorio did not give informed consent to Defendants conduct.

## SEVENTEENTH CLAIM FOR RELIEF

### Accounting

### (Against Defendant Careco)

149.   Plaintiffs incorporate by reference, as though fully set forth herein, all of the proceeding paragraphs.

150.   A fiduciary relationship existed between Solorio and Defendant Careco.

151.   Solorio is entitled to money from Careco requiring it to account for all money and property received, for which Solorio may be entitled to a portion.

## EIGHTEENTH CLAIM FOR RELIEF

### Request for Judicial Dissolution of Pursuant to Corps. Code §16801, et seq.

### (Against Defendant Careco)

152.   Plaintiffs incorporate by reference, as though fully set forth herein, all of the proceeding paragraphs.

153.   Given Careco's continuation the FZ150 business after Solorio's dissociation, despite Solorio's election to windup and dissolve the partnership, Solorio requests the Court determine Careco has engaged in conduct relating to the partnership business which makes it not reasonably practicable to carry on the business, and it is not reasonably practicable to carry on the partnership business in conformity with the partnership agreement, pursuant to Corporations Code §16801.

154.   Solorio requests the Court order and supervise the partnership being wound up, liquidated, and dissolved.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

    i.        For compensatory damages in an amount no less than $10,000,000.00;

    ii.      For punitive and exemplary damages in an amount to be determined at trial;

    iii.     For statutory damages;

    iv.     For disgorgement of Defendants' profits;

    v.      An injunction prohibiting Defendants from engaging in any further acts of trademark infringement, unfair competition or deceptive trade practices;

    vi.     A finding and judgment that Defendants have infringed Plaintiffs' Trademarks and an injunction prohibiting any further infringement;

    vii.    A finding and judgment that Defendants have violated 15 U.S.C. § 1125(d) and an order to transfer the domain name www.theshoedoc.com to Plaintiffs;

    viii.   A finding and judgment that this case is exceptional;

    ix.     A finding that Defendants are jointly and severally liable for all amounts awarded to Plaintiff;

    x.      For attorney fees;

    xi.     For costs incurred herein;

    xii.    Prejudgment interest at the maximum legal rate; and

    xiii.   Such other and further relief as the Court may deem just and proper. such other relief as the Court determines to be reasonable and proper.

/ / /

/ / /

/ / /

/ / /

Respectfully submitted,

Dated: March 27, 2024          LAW OFFICE OF DREW PETERSEN, P.C.


By:   //s/
      _____
      Gordon Andrew Petersen, II
      LAW OFFICE OF
      DREW PETERSEN, P.C.
      117581 Irvine Boulevard, Suite 108
      Tustin, California 92780
      P: 714-569-0043
      F: 714-569-0289
      E: drew@dpetersenlegal.com
      Attorneys for Plaintiffs Miguel Solorio
      and TheShowlorios Inc.


Dated: March 27, 2024          THE KINDER LAW GROUP, APC


By:   //s/
      _____
      Brian P. Kinder, Esq.
      THE KINDER LAW GROUP, APC
      19200 Von Karman Avenue, Fourth Floor
      Irvine, California 92612
      P: (949) 216-3070
      F: (949) 216-3074
      E: bkinder@tklglaw.com
      Attorneys for Plaintiffs Miguel Solorio
      and TheShowlorios Inc.

1

## **DEMAND FOR JURY TRIAL**

2

3      Pursuant to Fed. R. Civ. Proc. 38, Plaintiffs demand a trial by jury on all claims

4  and issues triable to a jury in this action.

5

                              Respectfully submitted,

6

7  Dated: March 27, 2024          LAW OFFICE OF DREW PETERSEN, P.C.

8
                              By:   //s/
9                                  Gordon Andrew Petersen, II
                                   LAW OFFICE OF
10                                 DREW PETERSEN, P.C.
                                   117581 Irvine Boulevard, Suite 108
11                                 Tustin, California 92780
                                   P: 714-569-0043
12                                 F: 714-569-0289
                                   E: drew@dpetersenlegal.com
13                                 Attorneys for Plaintiffs Miguel Solorio
                                   and TheShowlorios Inc.
14

15  Dated: March 27, 2024          THE KINDER LAW GROUP, APC

16
                              By:   //s/
17                                 Brian P. Kinder, Esq.
                                   THE KINDER LAW GROUP, APC
18                                 19200 Von Karman Avenue, Fourth Floor
                                   Irvine, California 92612
19                                 P: (949) 216-3070
                                   F: (949) 216-3074
20                                 E: bkinder@tklglaw.com
                                   Attorneys for Plaintiffs Miguel Solorio
21                                 and TheShowlorios Inc.

22

23

24

25

26

27